Case number 12-1054 at L. Bruce Packing Company, Inc. Petitioner versus National Labor Relations Board. Mr. O'Connor for the petitioner, Ms. Blancha for the respondent. Case number 12-1054 at L. Bruce Packing Company, Inc. Mr. O'Connor for the respondent. We are here today for two relatively limited pieces of a decision that's been long pending from the National Labor Relations Board, specifically the pieces dealing with the board's majority decision indicating that the respondent, Bruce Packing, did not establish his rebuttal defense on his selection of a Mr. Rojas for part of a RIF that occurred back in 2009. Additionally, there is a piece that we're here about dealing with an amendment that the General Counsel tried to add to the case, a new theory, at the end of the case, and we had objected on due process grounds, which the ALJ sustained that objection. It was reversed again by the majority on 2-1, indicating, among other things, that the matter had been fully litigated. Speaking first to the defense for Mr. Rojas, we believe that the board has erred in several ways. First, while it seems implicit in the ALJ's decision, this court has held that basically it's a sliding scale with the burden on the employer to establish this rebuttal defense on the right line. With a weaker prima facie case, we have a lower threshold to meet, and of course the converse is true as well. We believe in this case that it was a weak prima facie case. The evidence established was credited that Mr. Rojas had kept his activities secret and his union sympathies. He did not attend union meetings. The sum total of his activity in mid-June 2009 was to meet with and talk with coworkers during lunch. He expressed his sympathy for the union at the time, at lunch, right? He testified, yes, that he talked with his coworkers during these lunch meetings. The ALJ expressly found that there was no specific knowledge that the employer had as to his sympathies. There was no evidence, for example, that the employer could overhear those conversations at lunch. What they did find was, based on a couple of inferences and assumptions, and there was a credited piece of testimony against Mr. Esparza, a supervisor for the company, where he had made a comment that was attributed to him that these individuals had been selected because they had been meeting with the union. From that, it was inferred that he was part of that group. He was part of the they, I believe was in the comment. And then they assumed, because he had this knowledge, that this would be imputed to the ultimate decision-maker, Osmean Martinez. I will say that, in the record, it actually established that he did not attend any union meetings. Again, we've not tried to argue that initial establishment of the prima facie case because we know it's entangled with credibility determinations, which, of course, this Court does give great deference to. I think you find that the split, and I think it was pointed out clearly by Member Hayes in one of his footnotes, which lay forth his dissent on this point. The ALJ did find that Mr. Martinez's uncorroborated testimony would not be credited. There was corroborated testimony, however, from Mr. Martinez, and this is what Member Hayes pointed out, saying that he based this decision on reports that Mr. Esparza was giving him about Mr. Rojas's poor attendance and that these reports had been ongoing for more than a year. There is evidence in the record, actually, that was put in by the government that he had been disciplined twice in late 2008. He received a written verbal warning. What is the evidence that the decision was based, and there's no question he had a poor attendance record, but the problem is we have Martinez saying at the time he's making the decision, he's not looking at people's personnel records. We know there were people who had worse attendance records. How do you surmount those difficulties? How do you show that the decision was made because of his poor attendance? I think there's several responses to what you said. First of all, there is no evidence that somebody had worse discipline than he did. There was citation to it. Worse attendance records, I meant. I'm sorry? Weren't there employees who had worse attendance records than he did? No. I thought there was Rodriguez. There was an individual named Matthias Hernandez, and there was evidence put into the General Counsel. We gave all these records to the General Counsel showing all the attendance and performance and disciplinary records. They had offered evidence in the form of questioning from Mr. Martinez about this individual, Mr. Hernandez, having been late eight times in 2008. There's no evidence, and no evidence was put in the record, again, and everything was supplied, that he was disciplined for his attendance in 2008, unlike Mr. Rojas, who was disciplined twice. That's in General Counsel's Exhibits 6 and 7. There was also no evidence that Mr. Hernandez, in fact, had continued to be late into 2009. Obviously, that's getting more toward the critical period of when they're making the selection, which happened in June of 2009. It was credited, and it's in the record, that he was late seven times, including three times in more than two and a half hours. So if that's what the record establishes, what's the evidence that when Martinez made his decision about Mr. Rojas that it was about his attendance? He testified to that. He made the decision based on the attendance, the poor attendance of Mr. Rojas, and this was attributed to the reports that Mr. Esparza had been giving him over time. Mr. Esparza corroborated that testimony and said he had been giving these reports on every two to three months about this poor attendance, which is also further corroborated by the discipline that appeared in his records. In my mind, though, the biggest problem you have is that the ALJ credited the testimony of Esparza's friend. I can't remember his name now. He said that Esparza told him that as far as the four day shift people that he recommended to be fired, it was because of their union activity. And that was credited. And you point to what you say is this evidence in the record that kind of corroborates Martinez's testimony, but I guess when Martinez didn't testify that he checked any of those records and that he was just kind of going by a recollection of verbal reports, it's hard for me to see how that really corroborates it. A couple of things. The judge found that the ultimate decision maker, Mr. Martinez, was not given this knowledge. Actually, it was inferred to him that he was given this knowledge and this input from Mr. Esparza. So there's no evidence that he directly conveyed this to him. And I realize that, candidly, I realize that entanglement. That's, again, why we didn't go after the prima facie case. On the one hand, the majority says it's unclear what the ALJ creditor corroborated. Of course, then we have the dissent saying that there was corroboration of his testimony and, therefore, crediting. To me, if there was some uncertainty, it should have been sent back, not the conclusion to say we don't know what happened, but we're going to say that you didn't have any credited evidence in the record. We also had the evidence that is, frankly, pretty unique in one of these cases, where at the time the decision was made and they went to Mr. Rojas and told him that he had been selected because of his attendance. He, in fact, I think his testimony was that he kind of understood that he had been selected because of his poor attendance. It's, I think, an atypical fact that you go to somebody and they basically acknowledge the reason that you're giving to them at that time. All that proves is that he knew he had poor attendance. We know he has poor attendance from the records. That doesn't prove as to why he was selected. Well, and again, the paradigm for selection included attendance. That's not been disturbed. That was not part of the government's case saying that their selection process or methodology was improper in any way. I know they've now gone back to attack it to say Mr. Martinez should have done more. He should have done his own independent investigation. Again, that was not the theory in the complaint or the one presented to the administrative law judge. Again, if you have Mr. Martinez testifying that he based this on these reports that he's receiving and that's why he selected him and it was corroborated, we do think the testimony was credited. Briefly as to the due process issue, we believe, and we briefed it, obviously, we believe this court's authority basically forecloses a large part of the government's position on that. I know the government's taken the position that the case is- A large part or all of it? Well, I think a large part, but certainly I know the piece that they're arguing, that the Blake construction and the Conair decision, these were decisions that said that where the government was trying to amend the complaint and add new theories after, and actually it happened at the board level. They were trying to add new violations, and they've argued that technically the hearing hasn't closed when they went to move to amend the complaint. In practice, and I think the record clearly reflects this, we had rested. The government had no rebuttal. They made this argument to amend the complaint. We objected on due process grounds. They started to argue. The judge immediately cut everybody off and said, I'll take it under advisement and I'll deal with it on the briefing. And what was the content of the briefing that followed? There were briefs submitted, and basically we put forth why we wanted to have additional opportunity to respond to this. And I know part of what's been thrown back at us is we haven't established what we would have shown. Of course, that kind of flips things on its head. I mean, in this context, we don't have discovery from the board. We do know that the witness, Maria Cortez, who was the last witness who testified for the government, her husband testified second, and he testified that they had conversations about that June conversation. Of course, we didn't know about this other piece when he testified. So in response to Judge Griffith's question, what was in the briefing? In other words, what I'm getting at is wasn't that the opportunity to make your arguments? Well, at that point it was closed. That's what you're saying, but the judge had said she would take it on the briefs and then people filed briefs. So the issue was still open at that point. Suppose the judge had agreed with you and said, well, I'm going to reopen the hearing in your terms. But where she said it wasn't closed, let's hear more. Well, part of it was we didn't know what this additional evidence would look like because we didn't have the opportunity to question Mr. Maciel, her husband. We did point that out in the briefing. To the ALJ? To the ALJ, yes. You know, the judge pointed out that it was undisputed that we didn't have this opportunity. We do think for the board to just then conclude that we had this opportunity, frankly, is an error. Thank you. So let me just be very, very clear. If the complaint alleges two violations and then there's a hearing and a motion is made to amend the complaint to add a third violation based on the evidence at the hearing, if that motion is granted, do you need our cases to say that that would be a due process violation? Under these circumstances, yes. What do you mean under these circumstances? That we didn't have the opportunity. We gained knowledge that they were adding a brand new theory, a new violation of federal law. So what I'm trying to understand, even in our cases, is under this hypothetical, you have two charges in the complaint. And during the course of the hearing, there is testimony that causes the general counsel to move to amend the complaint to add a third alleged violation. If that motion had been granted, your argument as I'm hearing it is not that that would be a violation of due process, but rather that it would be a due process violation only if the record was closed and you had no opportunity to present evidence, or is the argument that while you have no burden to show prejudice, in effect you are arguing prejudice by saying you were unaware of this conversation between the husband and wife. Yeah, a little of both, candidly. Yeah, that's what I'm trying to understand. It's one thing if you're charged with smoking on two occasions, and then if the third count is you refuse to recognize the union. I mean, you know, it's apples and oranges. Here, the board's view was this was a rising out of the hearing, and I just want to understand your position on that. There's no evidence or argument that this was somehow new evidence or a surprise to the general counsel. The time to amend would have been after this witness, certainly at the close of the government's case in my position. That would have given us an opportunity. We may have asked for a continuance to prepare. We may have done other things. By the time that it's raised, the record for all intents and purposes is closed. We're done. Is your argument that, look, just because evidence comes out during the hearing that suggests that could be the basis of, you know, other claims against the employer doesn't mean that we're on notice that we're going to be held to account for those other allegations? We need to be told that, you know, yeah, these other sins have been mentioned, and we intend to hold you to account for those other sins. Yes, and I think this Court's authority says as much, and it gives us then the opportunity to prepare a different strategy. Again, the government controlling the complaint, having set this in motion, it certainly would have been minimally fair that when they had this evidence and they thought they had a new theory for whatever reason, whether they just discovered it, got around to it, would have let us known as soon as possible, which again would have been at the end of day two of the three-day hearing, three consecutive days, not word one mentioned during our case in response.  We were in the middle of the hearing on day two. You know, our whole strategy would have changed, et cetera. So I need to understand how far your argument goes. That's what I'm just trying to explore in the questioning. Part of the difficulty is it is speculative to know what Mr. Maciel would have testified to because, again, we didn't have an opportunity to go back and ask him. He very well could have testified that he had this conversation with his wife about this conversation in June and that she never mentioned anything about that, which would have created major credibility or other problems. Again, without this pretrial discovery in this process, we're kind of shooting blind a little bit. I'm just getting that the rules allow an amendment to the complaint. Yes. All right. So it is that it's a notice issue, but is it – I just need to understand if it's notice in an absolute sense or can it be notice – is it notice before the fact only or is it notice that can arise in the course of a hearing and a permissible amendment could be allowed? It can be the latter and it can be implicitly tried. And it would only be permissible if, in this case, the employer didn't object? In other words, the board's view of this, and I'm not – I just want to be clear here, is the witness testified, your witness denied, and the question is, well, what more could happen? So it's a quasi-prejudice inquiry, isn't it, or not? It is a little bit, but again, not having that opportunity and not having the opportunity to pose that to the other witnesses. We did ask limited questions of Mr. Esparza. We understood that that June conversation would involve credibility issues and there were allegations tied to that conversation, so we did solicit a denial. But we did not go further than that because, again, we didn't know that this was a theory the government was following or pursuing. But there's one way to read our cases saying that it's notice beforehand and there can be no amendment without a violation of due process. The other circuits have taken a slightly different tack. And so counsel for the board distinguishes our cases by saying factually distinguishable and that what our cases were talking about was what I call the apples and oranges type situation, not a situation that is explored during the hearing. Well, I think, again, it's different. I mean, the argument that it was fully litigated, I think the record establishes it was not fully litigated. And that's because you can show that you would have presented other witnesses or? At a minimum, we would have examined Mr. Masiano. So that's the quasi-prejudice inquiry. That is your burden? That is part of what, yes, it is. Okay. Thank you. Thank you. Good morning. Good morning. May it please the Court, my name is Nicole Lancia, and I represent the board in this case seeking enforcement of its order, finding that the company Bruce Packing violated Section 83 in one of the acts. Now, as the Court is aware, there are only two contested issues before it, the first being whether substantial evidence supports the board's finding that the company discriminatorily discharged employee robots, one of the day-shift employees. The other being, as we just explored, whether the board properly allowed the general counsel to amend the complaint. As for the first issue, the company does not contest that the general counsel met its initial right-line burden of proving that Rojas' union activity was a motivating factor in his discharge. And as the credit evidence shows, Supervisor Esparza admitted directly to his friend, Mauro Navarro, that he chose the day-shift employees because they were stirring things up by meeting with the union. Can I ask a question about standard of review? What was the board's standard of review of the ALJ decision in that regard? Because the board said it was not disturbing any of the credibility findings made by the ALJ. So what standard of review did the board use to overrule the ALJ with respect to Rojas? Well, in evaluating the credibility determinations made by the administrative law judge, the board explained that its established policy is not to overrule those unless a clear preponderance of the evidence can show that the evidence convinces the board that those determinations are incorrect. And the judge, in this case, did credit Mauro Navarro's testimony, establishing Esparza's direct admission of knowledge of animus, over the general denial of Supervisor Esparza. Now, the company counsel points out or alleges here that if, while they're saying that the general counsel has established its prima facie case, it was weak and that somehow lightens its burden. But even under its cited case law, I believe it was Cecil's in this circuit, the court did not say that the legal standard for rebutting the general counsel's initial right-line burden and case was any different. It still would have to show and persuade by a preponderance of the evidence that the employee would have been discharged absent that union activity. So the burden was not lighter and the company has not met that burden here. Considering the credited testimony of Mauro Navarro, that Esparza admitted why he chose the day shift employees, but also the fact that the judge discredited Osme Martinez's testimony that he alone selected the day shift employees. And I believe, as Your Honor pointed out earlier, that Osme Martinez did not review any personnel files. He even admitted at the hearing he didn't think it was important to do so. And also at the hearing he testified that he could not remember Rojas's attendance record, let alone the attendance record of Matias Rodriguez or the other disciplinary issues of the other employees who, at least if did not have worse attendance records, had as bad as disciplinary attitude or attendance issues. Counsel argues that this methodology argument was not presented. Your Honor, we're not arguing that there was a problem with the selection criteria, but the board does note that there is no showing in the company's attempt to present its defense that they even applied the selection criteria consistently at all. And in attempting to meet its defense, it would have had to show that Rojas would have been discharged without any, absent his union activity. And it hasn't shown that he was actually discharged because of his attendance record. Yes, he could have been discharged for that reason, but that's not what the credited testimony of Osme Martinez establishes or the credited testimony of Mauro Navarro's statements as far as his admission is established. Let me try to ask a better question than I did before. What did the board say that the ALJ had done wrong with respect to its conclusion about Rojas? I believe that the ALJ focused on Rojas's limited union activity and similar points that the company raises in its brief, despite the fact that it doesn't challenge the general counsel's prima facie case. The board, however, emphasized Navarro's testimony as far as his direct admission, but as well focused on the testimony that the judge did credit, but just interpreted differently. The fact that while Osme Martinez testified that he alone made the decision, the judge discredited that. The board also focused on that. Well, did the board say that the ALJ made incorrect findings of fact, or did the board say, we agree with all of the findings of fact made by the ALJ, but we just think de novo that there's a different conclusion as to legally what the significance is? I don't understand how the board did what it did. What standard of review the board was using? Well, the board reviews the evidence as the judge would, although they are not the triers of fact in the sense that they are not hearing the witnesses present the testimony, which is why there is deference to the credibility determinations. However, in reading the testimony, the transcript, the exhibits, the board is allowed to draw reasonable inferences from the record, which this court then reviews for substantial evidence, whether it's such evidence that is adequate and acceptable to a reasonable mind. Here, to answer Your Honor's question, the board was confused by the judge's statement that he did not credit Martinez's uncorroborated testimony, and then the judge did not expand on what that testimony was. Now, the board's decision recognizes that while Martinez and Esparza both established that Esparza had given direct oral reports on employees' attendance, Martinez's testimony did not establish that his reports on attendance was actually what the decision was based on, so that Rojas's attendance actually formed the basis for his decision. What the accredited evidence does show is that Esparza had substantial input into Osmond Martinez's decision, and that input was based on the fact that those employees were stirring things up by meeting with the union. If I could just move on to the second point, if there are no further questions. The board did properly allow the general counsel to amend the complaint at the end of the hearing, but before the close of the hearing. Now, the board can find a violation that isn't even alleged in the complaint, as long as there is notice and the issue is fully and fairly litigated, and we submit that there was notice that Esparza's statement that he promised wage increases for Maciel, Cortez's husband, and Correa was made, and also the company had the opportunity to present an evidence and a defense to rebut that claim. That there's notice because testimony was given and the company heard it, so anything a witness says, you know, any other bad things that the witness says that the employer did, as soon as that comes out of the witness's mouth, the employer is automatically on notice that they have to defend against that if that could be construed as a violation of the NLRA. Well, yes and no. So first, to address where the notice began, the complaint did allege that the June 19th conversation would be the subject of two other 8A1 allegations, the unlawful interrogation and the implied threat of unspecified reprisals, which are not contested here. But Cortez testified as to this conversation and noted that Esparza also made this additional promise of wage raises. Which isn't an 8A1 violation, right? It's an 8A3. No, that's a violation of Section 8A1. But also, the company had the opportunity to cross-examine her about that specific statement and actually did cross-examine her briefly about the telephone conversation. It also presented Esparza to contradict it. But when that cross-examination took place, it wasn't part of the complaint. It wasn't part of the charge, right? No, it wasn't part of the initial complaint. Right, right, right. But before the close of the hearing, the general counsel did move to add the allegation. But the company did have... But I'm just saying, I mean, the inference you were making was that at the time of the cross-examination, this was a live issue, this was the company had noticed that this was important, and I'm suggesting that that's not quite the case, right? The company is charged with certain issues and the burden and the whole concept of due process is that's what we're going to be focusing on. If something, some other bad action comes up, unless it's part of the complaint, they don't really have notice that this is going to be important, do they? Well, the purpose of notice is to not allege or present what the specific theory would be, but to allow the respondent to present a fair defense and rebuttal to charges. To charges that are being raised. Right. And at the time of the cross-examination, my only point is these charges have not been made. Yes. Okay. However, it goes past the cross-examination. At the end of the hearing when the general counsel moved to amend the complaint, the company did not ask for a recess or a continuance or seek to present perhaps rebuttal witnesses as other courts... That's literally the end of the hearing. Everybody had rested and the general counsel says, oh, one more thing, we want to amend the complaint. And they fought that, right? They resisted that. They said it's too late, you can't amend the complaint now. Well, they objected in a phrase on due process grounds. And they won. And asked nothing else. At that point, however... Yes, they won. When you win, you typically don't, you pack up your bags and walk out of the room, right? I mean, that's... Well, maybe I'm misunderstanding, but nobody won before... I mean, they won that vote. Didn't they, they won the point there that the complaint wasn't going to be amended? No, the judge reserved ruling on that. I'm sorry, you're right. Took it under advisement and briefing. And leading into, actually, that's what's... So you're saying what they should have done at that point in time when the judge said, I'll take it under advisement and said briefing on it, they should have called witnesses and acted as if the complaint was going to be, in fact, amended? That seems an odd... No, Your Honor. We're saying that they could have, under factors that other courts have considered, asked for a continuance. They could have objected to the introduction of the evidence while Cortez was testifying about its... Or they could have fought the whole idea that you can amend the complaint, which they did, right? And they prevailed on that after the briefing. Ultimately before the judge. However, my final point on that, on why we submit that they had notice, relates to the briefing. The judge reserved ruling on that issue and asked the company and the general counsel to discuss it in their briefs. Now, the company did have notice of the alleged Section 883 layoffs as violations. Now, the judge found as a fact that part of that phone conversation with Cortez, including the interrogation, the statements made about the unspecified reprisals, and the promise of benefits, used that in determining that the layoffs of Maciel and Correa were unlawful. And the company was obligated to accept to the judge's factual finding that Esparza made that statement, even though it prevailed before the administrative law judge. And it did not do so. So even in the briefs, it had the opportunity to contest that the statement was even made and to object to that, but it did not do so. How do you get around the fact that in Conair we said that there's no burden on the employer to show prejudice? Well, the employer, the person who is alleging that a due process violation occurred would still have to show that they did not have notice and that the issue was not fully and fairly litigated. They had no opportunity to present its defense. Because you just argued prejudice. No, I believe that I was arguing about how it was fully litigated, what the company had the opportunity to do and yet did not. It was fully litigated, I guess, in your view, because they knew that the testimony came in, but to go back to Judge Griffith's question, a lawyer picks his or her battles and isn't going to necessarily try to rebut or dispute or put in collateral evidence to disprove every statement that's made at a hearing unless they have noticed that that statement is going to be used against them substantively. And I don't understand how you're saying that they had to notice or that in that sense it was fairly litigated. As an initial matter, this Court has recognized in a decision called Desert Hospital v. NLRB that the burden of showing prejudice on assertively erroneous rulings is on the party claiming the injury, which would here be Bruce Pack and Company. But as to notice, the company knew that, one, that phone conversation would be an issue for other violations, but also that in the judge's decision, at a minimum, that those statements could be used to establish animus and knowledge on the part of the company in laying off the other employees, including three of which it has not contested, nor has it contested the 8-8-1s, aside from the one related to this complaint amendment. And again, it has a burden to, it has an obligation to accept to any find a factual or legal with which it disagrees that it wants to preserve for review before the Board and before the Court, and because it did not do so, the company has not been testing that as far as it made the statement of promise of wage increases. I mean, this Court seems to have set a sharp line, and I know you're resisting it, but we're bound by it, and just think of the implications of your argument for some of the reasons my colleagues have mentioned. At any event, anything further? Nothing further, Your Honor. I just want to ask this Court to enforce the Board's order in full and deny the company's petition for review. Thank you. Counsel for Petitioner? Just briefly, Your Honor. If I heard correctly, counsel for the Board, the statement that the Board was confused by Osmean Martinez's testimony and the implications of it, they certainly drew a conclusion from it. I would say to you that if they were confused, it was not proper for them to then draw conclusions from it. What do you understand the standard to have been applied by the Board? I think it's equivalent to the standard that you would apply here to their decisions. It's to give deference certainly to credibility findings, and if there's evidence that can be applied to existing established legal principles, I don't think it is proper for the Board to just substitute its beliefs or findings just because they may have a different feel about it. So I think it is analogous to this Court's review, understanding that this Court's review is a little bit more deferential certainly as to some issues. The point also about that we didn't fight this piece about this June 2009 conversation, I think that kind of stands our objection and due process on its head. We did object the moment that it came up that we didn't subsequently take exception to one factual piece that then got put in and used for another reason doesn't convert into an unfair labor practice or a violation of the National Labor Relations Act. So if there are no further questions? All right, thank you. We'll take the case under advisement. Thank you.
judges: Rogers, Griffith, Wilkins